IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


LOIS SHARER and STEVE HUMBER,                    04-CV-1690-BR

        Plaintiffs,                              OPINION AND ORDER

v.

STATE OF OREGON, PETER
OZANNE, and PETER GARTLAN,

        Defendants.


**LOIS SHARER**
**STEVE HUMBER**
152 West Bolz Road
Phoenix, OR 97535
(541) 301-5561

        Plaintiffs, *Pro Se*

**HARDY MYERS**
Attorney General
**ERIC D. WILSON**
Assistant Attorney General
Department of Justice
1162 Court Street N.E.
Salem, OR  97301-4096
(503) 378-6313

        Attorneys for Defendants


1 - OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on Defendants' Motion for Partial Summary Judgment (#107).  On March 8, 2007, the Court heard oral argument on the Motion and took Defendant's Motion under advisement.

For the reasons that follow, the Court **GRANTS** Defendants' Motion.


## BACKGROUND

The State Public Defender's Office employed Plaintiff Steve Humber as an attorney and computer-network administrator from 1992 to May 2003, and Plaintiff Lois Sharer as an Office Specialist II from September 1999 until July 2002 and as a legal assistant from July 2002 to May 2003.

In 2001 the State Public Defender's Office became Oregon Public Defense Services (OPDS) under the Oregon Public Defense Services Commission.

In January 2003, OPDS hired Defendant Peter Ozanne as Plaintiffs' supervisor.


## FACTS

The following facts are undisputed or viewed in the light most favorable to Plaintiffs:


2 - OPINION AND ORDER

I.    **Facts Related To Sharer**

On February 26, 2003, Sharer's son was arrested.    Sharer
left work early that day and took the following two days off to
deal with the situation.    Although Sharer returned to work on
February 28, 2003, she left work at 1:30 p.m.    She submitted a
timesheet, however, that reflected she had worked a full day on
February 28.

On March 3, 2003, Ozanne and Peter Gartlan, Chief Deputy
Public Defender, met with Sharer to discuss the apparent
timesheet discrepancies.    At that meeting, Sharer informed them
that she intended to take three weeks of sick leave to cope with
the stress created by her son's arrest.    At the time, Gartlan
expressed concern that this might not be an appropriate use of
sick leave.

On March 17, 2003, Sharer sent an email informing Laura
Anson, office supervisor, that Sharer could not return to work
that day, she was going to "see a specialist," she might not be
able to return to work the next few days, and she planned to use
sick time for her absence.    That same day, Gartlan sent Sharer a
letter informing her, among other things, that Sharer might have
a qualifying condition under the Family Medical Leave Act (FMLA).
Gartlan included an FMLA leave-of-absence request form and a form
for Sharer's health-care provider to certify Sharer's medical
condition.    Gartlan also informed Sharer that Defendants looked

3 - OPINION AND ORDER

"forward to receiving . . . documentation [of Sharer's medical condition] for the purpose of authorizing sick leave."

On March 18, 2003, Sharer sent Gartlan an email stating she had received his letter and the documents and advising him that she was not going to fill out the request for FMLA leave.  That same day, Sharer provided Defendants with a note from Iva Wick, MS, LPC, dated March 17, 2003, in which Wick stated:  "Please excuse [Sharer] at work at this time for confidentiality reasons until the end of the month.  Upon her return to work, she may need a modified working schedule which will be re-evaluated at that time."

On April 1, 2003, Sharer met with Gartlan.  On April 2, 2003, Gartlan sent Sharer a letter in which he summarized their meeting; reiterated OPDS intended to provide Sharer "with all the benefits that the law and state allow"; asked Sharer to sign a release for Gartlan to talk to Wick to get her assistance with "creating a work regimen and work environment that will allow Sharer to perform the core functions of your employment"; informed Sharer that he intended to "tentatively label [her] leave as FMLA-OFLA [Oregon Family Leave Act], based on the description [Sharer] provided [Gartlan] regarding the cause for [her] absence"; and urged Sharer to submit the FMLA forms.

On April 2, 2003, Sharer responded to Gartlan via email and informed him that she would not release her medical diagnosis to

4 - OPINION AND ORDER

Gartlan or any member of his management team; she was not requesting leave under FMLA or OFLA "because this is not a family leave issue"; she would not provide further documentation of her medical condition; and she would not be back to work on April 3, 2003.

On April 4, 2003, Gartlan sent Sharer a letter in which he noted his decision to conditionally designate the time that Sharer was away from the office as FMLA/OFLA leave; requested Sharer to provide medical documentation to support her requests for accommodation by April 11, 2003; and informed her that failure to provide the documentation could subject her to disciplinary procedures.

On April 8, 2003, Sharer sent an email to Gartlan informing him that, among other things, she would not fill out the FMLA/OFLA leave forms. Sharer also sent Gartlan another letter from Wick dated April 8, 2003, in which Wick noted Sharer had reported "increased symptoms" that interfered with her work duties and requested Defendants to allow Sharer to have "some kind of a modified work schedule." Wick did not identify Sharer's medical condition or diagnosis.

On April 11, 2003, Gartlan sent Sharer a letter in which he noted Defendants had reviewed the April 8, 2003, letter from Wick, but Defendants concluded Wick did not provide enough information for Defendants to identify Sharer's symptoms and

their effect on her ability to perform her job, whether they were caused by or related to a disability, or whether an accommodation was necessary.  Gartlan also requested Sharer to allow him to contact her doctors; pointed out that Sharer still had not returned the FMLA/OFLA certification forms; noted she would be subject to discipline if she did not return the forms; advised her that she needed to return to work on April 14, 2003; and indicated he would move her work station to be closer to a co-worker who she was comfortable around.

On April 13, 2003, Sharer responded to Gartlan by email and stated "No, I don't think so" to the requirement that she return to work.  She also advised she would be requesting a lateral transfer.

On April 14, 2003, Gartlan sent Sharer a written reprimand for her refusal to return to work on April 14 and her refusal to provide the required medical documentation regarding her leave of absence.  Gartlan informed Sharer that her refusals constituted insubordination, misconduct, and "other unfitness to render effective service."  Gartlan also advised he would begin termination proceedings if Sharer did not return to work on April 16, 2003.

Sharer did not return to work on April 16.  On April 17, 2003, Gartlan notified Sharer that he had commenced pre-dismissal proceedings and that he had scheduled a pre-dismissal meeting for

April 23, 2003.  He also advised Sharer that she could attend with witnesses and/or submit written testimony.

The pre-dismissal meeting occurred on April 30, 2003.  On May 12, 2003, Gartlan sent Sharer a letter in which he memorialized the meeting; related the history of Sharer's issues beginning in March 2003; and noted Sharer produced at the meeting a report from Mark Olsen, M.D., dated April 22, 2003.  In the report, Dr. Olsen diagnosed Sharer as suffering from agoraphobia with panic disorder and depression; prescribed Paxil, amitriptyline, alprazolam, and counseling; and authorized "time loss" from  April 1 to May 15, 2003.  Gartlan noted Olsen's diagnosis and Sharer's reliance thereon were inconsistent with the reasons Sharer had given previously for her absence, which included concern for her son, "confidentiality reasons," and a prior surgery.  In light of the conflicting reasons that Sharer provided to Defendants, Gartlan stated he doubted the validity of the information that Sharer provided at the April 30, 2003, hearing and would need a second medical opinion before making a final decision on Sharer's termination.  Accordingly, Gartlan informed Sharer that he was making arrangements for her to be examined by another doctor as soon as possible pursuant to the FMLA/OFLA.  Gartlan also advised Sharer that her failure to attend the appointment would result in further discipline.

On May 15, 2003, Sharer sent an email to Defendants in which

7 - OPINION AND ORDER

she informed them that she was not requesting FMLA leave, and, therefore, she would not attend the scheduled medical appointment.

On May 20, 2003, Gartlan sent Sharer a notice of dismissal effective May 27, 2003, on the grounds of misconduct, insubordination, inefficiency, and "unfitness to render effective service."

## II.  Facts Related to Humber

In early March 2003, Humber's secretary reported to Gartlan that Humber was not doing his work and was not responding to emails asking that he file requests for extensions of time. Gartlan reviewed Humber's "tallies" and concluded Humber had an "extraordinary" backlog of cases on his docket.  On March 19, 2003, Gartlan met with Humber and expressed concern about his backlog and his low productivity.

After the March 19, 2003, meeting, Gartlan reviewed the office database and learned Humber had filed only two short briefs in thirteen weeks.  Gartlan also learned Humber's attendance was "spotty," he had stopped helping to edit briefs written by other attorneys in the office, and he had neglected his network administrator's duties by failing to back up the OPDS computer system for over six months.

On April 3, 2003, Humber sent an eight-page email to Gartlan and Ozanne informing them he and Sharer were gong to be married

in the near future and setting forth his thoughts on Sharer's
issues.

On April 7, 2003, Gartlan met with Humber and placed him on
a work plan.  At the conclusion of the meeting, Gartlan learned
Humber was keeping a gun in his desk at the office.  Gartlan
asked Humber to remove the gun, and Humber took it to his truck.
At 12:15 p.m., Humber telephoned Gartlan and informed him that he
was experiencing shortness of breath and heart palpitations and
wanted to leave.  Gartlan offered to drive Humber "wherever [he]
needed to go," but Humber declined the offer and left without
assistance.  Later the same day, Gartlan discovered "numerous
files in [Humber's] office with what appear[ed] to be unanswered
requests for information, including some requests from several
years ago."

On April 9, 2003, the Oregon Court of Appeals issued an
order in one of Humber's cases with a cover letter addressed to
Ozanne in which the court suggested "a review of your office's
handling of this case might be appropriate."

On April 24, 2003, Gartlan dismissed Humber via a letter in
which Gartlan noted it was his "strong belief that [Humber] ha[d]
severely neglected [his] caseload and employment responsibilities
for at least the first three months of 2003. . . .  [Humber's]
caseload [was] in terrible condition and need[ed] prompt and
intense attention.  [Humber had] the highest number of backlog

cases in the office."

## PROCEDURAL BACKGROUND

On November 18, 2004, Plaintiffs filed a Complaint seeking damages and injunctive relief on the grounds that Defendants violated the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12112 and 12203; the Rehabilitation Act, 29 U.S.C. § 794; and medical-leave laws when they (1) failed to accommodate Sharer's disabilities, (2) terminated Plaintiffs' employment because of Sharer's disability, (3) perceived Sharer as being disabled, (4) terminated Plaintiffs' employment in retaliation for Plaintiffs' assertions of their rights under the ADA, (5) terminated Humber's employment because he was associated with Sharer, and (6) terminated Humber's employment for opposing Defendants' unlawful employment acts or practices.  In addition, Plaintiffs alleged Defendants wrongfully discharged Plaintiffs in retaliation for taking medical leave and for asserting their rights under medical-leave laws.

On June 27, 2005, the Court granted Defendants' Motion to Dismiss as to (1) Plaintiffs' claims under the ADA against Ozanne and Gartlan except for Plaintiffs' claim for prospective injunctive relief, (2) Plaintiffs' claims under the ADA against the State of Oregon, (3) Plaintiffs' claims under the Rehabilitation Act against Ozanne and Gartlan, and

10 - OPINION AND ORDER

(4) Plaintiffs' claims against all Defendants for wrongful discharge.

On September 2, 2005, Plaintiffs filed a First Amended Complaint in which they alleged Defendants Ozanne and Gartlan violated the ADA and the State violated the Rehabilitation Act when they (1) failed to accommodate Sharer's disability and (2) terminated Plaintiffs' employment.  Plaintiffs also alleged Defendants discharged Plaintiffs in retaliation for taking medical leave and for asserting their rights under medical-leave laws in violation of 29 C.F.R. § 825.220.

On March 14, 2006, Defendants filed a motion seeking summary judgment as to Plaintiffs' claims under the Rehabilitation Act on the ground the agency that employed Plaintiffs does not receive federal funds.  On June 28, 2006, the Court granted Defendants' Motion.

On August 14, 2006, Plaintiffs filed a Second Amended Complaint in which they allege (1) Ozanne and Gartlan violated the ADA by terminating Plaintiffs' employment because of Sharer's disabilities and/or because Humber was associated with Sharer and/or in retaliation against Humber for opposing Defendants' unlawful acts or practices; (2) Defendants discharged Plaintiffs for asserting their rights under the FMLA; (3) Ozanne and Gartlan deprived Plaintiffs of their right to equal protection; (4) Defendants disciplined Humber in retaliation for disclosing

11 - OPINION AND ORDER

unlawful employment practices in violation of Oregon's
Whistleblower Statute, Or. Rev. Stat. § 659A.203; and
(5) Defendants discharged Sharer in retaliation for her
invocation or utilization of procedures available to her pursuant
to Oregon Revised Statutes § 659A.100-145.

On December 4, 2006, Defendants moved for summary judgment
on Plaintiffs' equal-protection claim, Sharer's FMLA claim,
Humber's whistleblower claim, and Sharer's retaliatory discharge
claim.

After Defendants' Motion was fully briefed, Plaintiffs'
counsel, William Later, moved to withdraw.  On February 23, 2007,
the Court granted Later's Motion to Withdraw and granted
Plaintiffs leave to file a Sur-Reply to Defendants' Motion for
Summary Judgment.  On March 8, 2007, the Court heard oral
argument on Defendants' Motion.

## STANDARDS

Fed. R. Civ. P. 56(c) authorizes summary judgment if no
genuine issue exists regarding any material fact and the moving
party is entitled to judgment as a matter of law.  The moving
party must show the absence of an issue of material fact.  *Leisek
v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002).  In
response to a properly supported motion for summary judgment, the
nonmoving party must go beyond the pleadings and show there is a

12 - OPINION AND ORDER

genuine issue of material fact for trial. *Id*.

An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must draw all reasonable inferences in favor of the nonmoving party. *Id.* "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948 (9th Cir. 2004)(citing *Sherman Oaks Med. Arts Ctr., Ltd. v. Carpenters Local Union No. 1936,* 680 F.2d 594, 598 (9th Cir. 1982)).

A mere disagreement about a material issue of fact, however, does not preclude summary judgment. *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990). When the nonmoving party's claims are factually implausible, that party must come forward with more persuasive evidence than otherwise would be required. *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1147 (9th Cir. 1998)(citation omitted).

The substantive law governing a claim or a defense determines whether a fact is material. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001).

## DISCUSSION

### I.    Plaintiffs' Equal-Protection Claim Is Barred by *Engquist*.

In their Second Amended Complaint, Plaintiffs brought a claim for denial of their right to equal protection on the ground that Defendants subjected them to "differential terms and conditions of employment that were not required of other non-disabled co-workers."

Plaintiffs' equal-protection claims are based on the class-of-one theory of equal protection. *See Village of Willowbrook v. Olech*, 528 U.S. 562 (2000).  In *Olech*, the plaintiffs applied to the Village to connect their property to the municipal water supply.  528 U.S. at 563.  Although the Village approved the connection on condition that the plaintiffs grant a 33-foot easement to the Village, the plaintiffs objected on the basis that the Village required only a 15-foot easement from other property owners.  After the Village relented and agreed to connect the plaintiffs with a 15-foot easement, the plaintiffs filed an action alleging the Village's initial demand of a 33-foot easement violated the plaintiffs' equal-protection rights. *Id*.  The Supreme Court acknowledged a class-of-one equal-protection claim and noted such claims arise when "the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Id.* at 564.

14 - OPINION AND ORDER

Recently the Ninth Circuit examined whether the class-of-one theory of equal protection applies to decisions made by public employers with respect to their employees. *See Engquist v. Or. Dep't of Ag.*, Nos. 05-35170, 05-35263, 2007 WL 415249, at *7 (9th Cir. Feb. 8, 2007). The Ninth Circuit concluded "the class-of-one theory of equal protection is inapplicable to decisions made by public employers with regard to their employees." *Engquist*, 2007 WL 415249, at *7. The Ninth Circuit reviewed the decisions in which it had applied *Olech* as well as the decisions of other circuit courts and concluded "*Olech* is too slender a reed on which to base such a transformation of public employment law. It seems unlikely that the Supreme Court intended such a dramatic result in its per curiam opinion in *Olech*." *Id.* (citation omitted). In their Sur-Reply, Plaintiffs assert the Ninth Circuit's decision in *Engquist* is in opposition to the decisions of some other circuits that have applied *Olech* and cites *Ziegler v. Jackson*, 638 F.2d 776 (5th Cir. 1981); *Ciechon v. City of Chicago*, 686 F.2d 511 (7th Cir. 1982); and *Batra v. Board of Regents of University of Nebraska*, 79 F.3d 717 (8th Cir. 1996). Nevertheless, this Court must follow the law of the Ninth Circuit. Accordingly, the Court concludes Plaintiffs' equal-protection claim is barred by *Engquist* and grants Defendants' Motion for Summary Judgment as to this claim.

**II.  Humber's Whistleblower Claim Is Untimely.**

Humber asserts Defendants discharged him for reporting
Defendants' violations of federal and/or state law.  Oregon
Revised Statutes § 659A.203(1)(b) provides in pertinent part:

> [I]t is an unlawful employment practice for any
> public employer to:  . . .
>
> Prohibit any employee from disclosing, or
> take or threaten to take disciplinary action
> against an employee for the disclosure of any
> information that the employee reasonably believes
> is evidence of:
>
> (A) A violation of any federal or state
> law, rule or regulation by the state, agency or
> political subdivision.

Oregon Revised Statutes § 659A.875, however, requires:

> (1) a civil action . . . alleging an unlawful
> employment practice must be commenced within one
> year after the occurrence of the unlawful
> employment practice unless a complaint has been
> timely filed [with BOLI] under ORS 659A.820.
>
> (2) A person who has filed a complaint under ORS
> 659A.820 must commence a civil action . . . within
> 90 days after a 90-day notice is mailed to the
> complainant.

Although Humber did not file this action within one year of
his discharge, he filed a joint complaint with the Oregon Bureau
of Labor and Industries (BOLI) and the Equal Employment
Opportunity Commission (EEOC) in accordance with the requirements
of Oregon Revised Statutes § 659A.820.  BOLI mailed Humber a 90-
day notice letter on August 2, 2004.  Humber received the 90-day
notice letter from the EEOC "shortly . . . after" August 24,

16 - OPINION AND ORDER

2004.  Humber filed this action on November 18, 2004, 108 days
after BOLI sent the 90-day notice letter and, at most, 87 days
after he received a 90-day notice letter from the EEOC.

In their Response, Plaintiffs concede Humber did not file
this action within 90 days of the mailing of the 90-day notice
letter by BOLI.  Plaintiffs, however, assert Humber's
whistleblower claim is timely because (1) the 90-day limitations
period set out in § 659A.875(2) applies only to actions filed in
state circuit court and (2) Humber filed his discrimination claim
within 90 days of the date on which he received his 90-day notice
letter from the EEOC.

### A. The Limitations Period in § 659A.875(2) Applies to Actions in Federal Court as well as Actions in State Court.

Humber does not cite any authority to support his
assertion that the limitations period in § 659A.875(a) applies
only to actions in state court.  Humber relies on the language of
the 90-day notice letter, which states:  "You are hereby notified
that a civil suit in state circuit court based on the allegations
in this complaint must be commenced within 90 days from the above
mailing date."

The text of a BOLI letter, however, cannot control a
statutory 90-day limitation.  Moreover, even if the Court were to
interpret the limitations period in the manner urged by Humber,
the logical conclusion would be that the private right of action

17 - OPINION AND ORDER

created in § 659A would allow plaintiffs to file actions only in state court. Such an interpretation also would result in application of the statute of limitations to claims brought under § 659A in state court, but eliminate application of the statute of limitations to those same claims if they were brought in federal court. Neither of these results is supported by the law. In any event, numerous cases have concluded the 90-day limitations period set out in § 659A.875(2) applies in federal court. *See, e.g., Snook v. Rabold*, No. CV 06-849-MO, 2006 WL 2934274 (D. Or. Oct. 12, 2006); *Chestnut v. Fred Meyer Jewelry, Inc.*, No. Civ. 02-3088-CO, 2004 WL 1900556 (D. Or. Aug. 24, 2004).

Accordingly, he Court concludes the 90-day limitations period of § 659A.875(2) applies to actions filed in federal court.

**B.  Joint Filing with the EEOC and BOLI Does Not Eliminate the Limitations Period under § 659A.875(2).**

Humber does not cite any law to support his assertion that the limitations period set by § 659A.875(2) is inapplicable when a plaintiff files both a BOLI complaint alleging a violation of § 659A and an EEOC complaint alleging violations of the ADA. In fact, a number of cases have held a plaintiff's claims under § 659A were time-barred when filed more than 90 days after the mailing of the BOLI letter but less than 90 days after receiving an EEOC letter. For example, the plaintiff in *Snook* filed a

18 - OPINION AND ORDER

complaint with BOLI and the EEOC alleging violations of Oregon
Revised Statutes § 659A.030 and Title VII.  2006 WL 2934274, at
*2.  BOLI mailed the plaintiff a 90-day notice letter on July 7,
2005, and the plaintiff received a 90-day notice letter from the
EEOC on August 9, 2005.  *Id.*, at *2, at *8.  On October 7, 2005,
the plaintiff filed a civil action in federal court alleging
violations of § 659A.030 and Title VII.  The court held the
plaintiff's claim under § 659A was barred by § 659A.875(2)
because it was filed 92 days after BOLI mailed its 90-day notice
letter, but the plaintiff's Title VII claim was timely filed.
*Id.*, at *8.  *See also Davis,* 2004 WL 1382660, at *3 (the
plaintiff's claim under § 659A was time-barred because it was not
filed within 90 days of the BOLI notice letter, but the Title VII
claim was timely because it was filed within 90 days of the time
that the plaintiff received her notice letter from the EEOC).

        Accordingly, the Court concludes Humber's whistleblower
claim is untimely under § 659A.875(2) because he did not file it
within 90 days of the date BOLI sent his 90-day notice letter.

**C.   Defendants Did Not Waive Their Limitations Defense.**

        In their Sur-Reply, Plaintiffs contend Defendants may
not raise the 90-day limitations period as a defense at this
point because they did not assert it as an affirmative defense in
their Answer.

        A defendant may waive the statute-of-limitations

19 - OPINION AND ORDER

defense.  *See Soltani v. Western & Southern Life Ins. Co.,* 258
F.3d 1038, 1044 (9th Cir. 2001).  "In the absence of a showing of
prejudice, however, [the] affirmative defense [of the statute of
limitations] may be raised for the first time at summary
judgment."  *Camarillo v. McCarthy*, 998 F.2d 638, 639 (9th Cir.
1993)(citing *Rivera v. Anaya*, 726 F.2d 564, 566 (9th Cir.1984)).

Here Plaintiffs have not made a showing of prejudice.
Indeed, Plaintiffs did not include the whistleblower claim in
their first two Complaints, and Defendants filed this Motion for
Summary Judgment only three months after they filed their Answer
to Plaintiffs' Second Amended Complaint.  Plaintiffs did not
identify in their briefing or at oral argument any prejudice
resulting from the three months that elapsed between Defendants'
Answer and Defendants' assertion of the limitations period as a
defense in their Motion for Summary Judgment.  The Court,
therefore, concludes Plaintiffs have not established prejudice
that would prohibit Defendants' from raising a statute-of-
limitations defense now.

Accordingly, the Court concludes Humber's whistleblower
claim was brought after the time allowed by the statute of
limitations, and, therefore, the Court grants Defendants' Motion
for Summary Judgment as to this claim.

**III. Sharer's Retaliation Claim Is Untimely.**

Sharer alleges Defendants discriminated against her for

invoking her rights under Oregon Revised Statutes § 659A.100-145 and discharged her in retaliation for invoking these rights in violation of Oregon Revised Statutes § 659A.109.

Section 659A.109 provides in pertinent part:

> It is an unlawful employment practice for an employer to discriminate against a worker with respect to hire or tenure or any term or condition of employment because the worker has applied for benefits or invoked or utilized the procedures provided for in ORS 659A.100 to 659A.145 or has given testimony under the provisions of such sections.

Sharer's retaliation claim is subject to the statute of limitations in § 659A.875(2).  On June 29, 2004, BOLI sent Sharer a 90-day notice letter.  Sharer received the 90-day notice letter from the EEOC "shortly . . . after" August 20, 2004.  As noted, Plaintiffs filed this action on November 18, 2005, 139 days after BOLI sent Sharer the 90-day letter.

Accordingly, for the reasons already noted as to Plaintiff Humber, the Court concludes Sharer brought her retaliation claim after the statute-of-limitations period, and, therefore, the Court grants Defendants' Motion for Summary Judgment as to this claim.

**IV.  Sharer Did Not Seek to Enforce Her Rights under FMLA.**

Sharer contends Defendants discharged her "in retaliation for asserting [her] federally protected rights" under the FMLA in violation of 29 C.F.R. § 825.220.  Defendants move for summary Judgment against Sharer on the ground that she did not exercise

21 - OPINION AND ORDER

and affirmatively refused to exercise her rights under the FMLA.

"The FMLA provides job security to employees who must be absent from work because of their own illnesses, to care for family members who are ill, or to care for new babies." *Bachelder v. Am. West Airlines*, 259 F.3d 1112, 1119 (9th Cir. 2001)(citing 29 U.S.C. § 2612).  "Under the FMLA, employees are entitled to take up to twelve weeks of leave each year and are guaranteed reinstatement after exercising their leave rights. *Bailey v. Southwest Gas Co.*, 275 F.3d 1181, 1185 (9th Cir. 2002)(citing *Bachelder*, 259 F.3d at 1119).  It is unlawful for an employer to interfere with, to restrain, or to deny an employee's exercise of FMLA rights or to discharge an employee because the employee has opposed practices made unlawful under the FMLA.  29 U.S.C. § 2615(a)(1)-(2).

Employees generally must notify their employers in advance if they plan to take leave for reasons covered by the Act. Employees, however, need not expressly assert their FMLA rights or even mention the FMLA.  *Bailey*, 275 F.3d 1185 (citation omitted).  The employer bears the responsibility to determine whether an employee's leave request is covered by the FMLA.  29 C.F.R. § 825.208(a).

If an employer lacks sufficient information to determine whether an employee's leave (including leave taken in the form of a reduced schedule) qualifies under the FMLA, the employer must

22 - OPINION AND ORDER

inquire further in order to ascertain whether the FMLA applies.

*Bailey*, 275 F.3d at 1185 (citing 29 C.F.R. § 825.208(a)).

In addition:

> In response to an employer's inquiries, an employee must explain the reasons justifying the requested leave so as to allow the employer to determine whether the FMLA is implicated.  The employer may deny leave where an employee fails to explain the reason for the leave, or does not state a qualifying reason.
>
> The employer may also require that the employee obtain, in a timely manner, a written certification by a health care provider regarding the medical condition necessitating leave.  A certification will be considered sufficient if it details several aspects of the health condition including, in relevant part, a statement of the medical necessity for the leave, the expected duration of leave, and a statement that the employee is unable to perform the functions of the employee's job.  If an employer has reason to doubt the validity of a medical certification, the
>
> employee may be required to obtain a second medical opinion at the employer's expense.

*Id*.

Defendants contend Sharer never availed herself of any protected rights under the FMLA and, in fact, explicitly refused to exercise her right to leave under FMLA.  According to Defendants, therefore, Sharer may not bring a claim for discrimination in violation of FMLA.

In *Bailey*, the plaintiff's supervisor confronted her regarding her poor work performance.  275 F.3d at 1183.  The plaintiff informed her supervisor that she "could not safely work

23 - OPINION AND ORDER

the overtime assigned to her." *Id*.  The supervisor requested the
plaintiff to obtain a letter from her doctor describing her
condition and indicating why she could not work overtime because
the plaintiff's statement suggested she might have a medical
condition that compromised her job performance.  *Id*.  One month
later, the plaintiff provided her employer with a letter from her
gastroenterologist in which he stated in pertinent part:  "Based
on [the plaintiff's] current medical problem, I have placed her
on medication whose side effect is sedation as well.  She should
only be working roughly an eight-hour shift each day." *Id*.  The
letter did not specify the plaintiff's medical problem or
identify the drugs that she was taking.  As a result of this
letter, the plaintiff's supervisor advised the plaintiff of her
rights and responsibilities under the FMLA and requested the
plaintiff to have her doctor complete FMLA Form 180.4 within
fifteen days.  *Id*. at 1184.  The plaintiff informed her employer
that she was "not sick or disabled," her problem with working
overtime "was prompted by excessive overtime rather than a
medical condition or sleep-inducing medication," and she failed
to provide the FMLA certification.  *Id*.  The plaintiff's employer
warned her that failure to submit the FMLA form could result in
her termination for insubordination.  The Human Resources manager
offered to talk to the plaintiff's doctor regarding her medical
condition.  *Id*.  The plaintiff refused the Human Resources

24 - OPINION AND ORDER

manager's offer.  The plaintiff ultimately provided her employer
with an FMLA form from her doctor in which he failed to give any
information about the plaintiff's medical condition and to
address the plaintiff's medication or her issues with fatigue
related to overtime.  *Id*.  The employer requested the plaintiff
to obtain sufficient information from her doctor to enable the
employer to evaluate the plaintiff's fitness for duty, but the
plaintiff refused to allow her doctor to provide any information
directly to her employer.  Shortly thereafter, the plaintiff was
fired for insubordination.  *Id*. at 1185.  The plaintiff then
filed an action in which she alleged, among other things, that
her employer violated the FMLA.  The district court granted the
defendant's motion for summary judgment as to the plaintiff's
FMLA claim because the plaintiff testified at her deposition that
"she did not have a serious health condition, she never requested
family medical leave, and would not have taken family medical
leave had it been offered."  *Id*.

On appeal, the Ninth Circuit found:

> Because Bailey never sought to invoke her FMLA
> rights [and denied she sought FMLA leave], she may
> not now argue that Southwest interfered with the
> exercise of her rights by suggesting the FMLA
> might apply, providing her with information on it,
> and seeking a medical certification of her
> condition.
>
> Second, there is no evidence that any of
> Southwest's actions interfered with her rights
> under the FMLA.  On the contrary, Southwest had
> both the right and the responsibility to inquire

further after Bailey and her physician indicated
that she was taking soporific medication which
interfered with her ability to work overtime
. . . .  While Southwest complied with its duties
and responsibilities under the FMLA, Bailey failed
to shoulder her burden.

* * *

It was not unlawful for Southwest to require that
Bailey explain her use of soporific medicine while
at work, and her refusal to provide additional
information was not a protected activity.
Southwest could, therefore, consider Bailey's
failure to cooperate in making its decision to
terminate her for insubordination.

*Id*. at 1186.  The Ninth Circuit affirmed the district court.

Here Sharer made the following statements to Defendants in
numerous emails:

"I am not requesting leave under FMLA (your office
doesn't qualify for this coverage) or OMLA,
because this is not a family leave issue."

"Today, I received your letter with attached forms
for applying for FMLA/OFLA leave dated March 17,
2003. . . .  I will not be filling out a request
for this type of leave."

"You are aware that I have not filled out and
returned the FMLA-OMLA Leave Forms.  Nor, do I
plan to.  So why are you authorizing . . . to
designate as FMLA-OMLA?"

"I have not requested FMLA/OFLA leave; therefore,
I will not be attending the scheduled appointment
you have arranged with Dr. Deena Klein."

In addition, when asked about these emails in her deposition, the
following exchange between defense counsel and Plaintiff
occurred:  Q:  "Okay, and you were choosing not to apply for FMLA
or OFLA leave?"  A:  "That's Correct."  Finally, Humber, in his

26 - OPINION AND ORDER

eight-page email to Defendants about Sharer noted "Gartlan's insistence that [Sharer's] leave is Family Leave is naive and wrong."

On this record, it is conclusively established that Sharer did not seek to enforce her rights under FMLA, and, in fact, she repeatedly refused to do so.  As in *Bailey*, therefore, Sharer "may not now argue [Defendants] interfered with the exercise of her rights by suggesting the FMLA might apply, providing her with information on it, and seeking a medical certification of her condition."

Accordingly, the Court grants Defendants' Motion for Summary Judgment as to this claim.


<u>**CONCLUSION**</u>

For these reasons, the Court, **GRANTS** Defendants' Motion for Partial Summary Judgment (#107).

Moreover, in light of the Court's previous dispositive rulings (Opinion and Order of June 27, 2005, and Opinion and Order of June 28, 2006), the only unresolved claims from Plaintiffs' Second Amended Complaint remaining for trial are:

    1.    Plaintiff Sharer's ADA claim against Defendants Ozanne and Gartlan limited to prospective injunctive relief on the grounds that they failed to accommodate Sharer's disabilities and terminated her because of her

27 - OPINION AND ORDER

disabilities and/or in retaliation for asserting her
rights under the ADA,

2.    Plaintiff Humber's ADA claim against Defendants Ozanne
and Gartlan limited to prospective injunctive relief on
the grounds that they terminated Humber's employment
because he associated with Sharer and/or in retaliation
for opposing their unlawful employment practices under
the ADA, and

3.    Plaintiff Humber's FMLA claim.

Accordingly, the Court directs the parties to limit the
scope of their proposed Pretrial Order due April 24, 2007, to
these claims and the related defenses.

IT IS SO ORDERED.

DATED this 30th day of March, 2007.


                                    /s/ Anna J. Brown
                                    _____
                                    ANNA J. BROWN
                                    United States District Judge


28 - OPINION AND ORDER