IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


LOIS SHARER and STEVE HUMBER,                    04-CV-1690-BR

            Plaintiffs,                          OPINION AND ORDER

v.

STATE OF OREGON, PETER
OZANNE, and PETER GARTLAN,

            Defendants.


LOIS SHARER
STEVE HUMBER
152 West Bolz Road
Phoenix, OR 97535
(541) 301-5561

            Plaintiffs, *Pro Se*

HARDY MYERS
Attorney General
ERIC D. WILSON
Assistant Attorney General
Department of Justice
1162 Court Street N.E.
Salem, OR  97301-4096
(503) 378-6313

            Attorneys for Defendants

1 - OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on Plaintiff Sharer's Motion for Reconsideration (#173) of the Court's decision to grant summary judgment for Defendants on Sharer's FMLA claim.

For the reasons that follow, the Court **GRANTS** Plaintiff's Motion to the extent that the Court has reconsidered the matter. The Court, nonetheless, adheres to its March 30, 2007, Opinion and Order in which it concluded, among other things, Defendants are entitled to summary judgment as to Sharer's FMLA claim.

**FACTUAL BACKGROUND**

The following facts are undisputed or viewed in the light most favorable to Plaintiffs:

The State Public Defender's Office employed Plaintiff Steve Humber as an attorney and computer-network administrator from 1992 to May 2003 and Plaintiff Lois Sharer as an Office Specialist II from September 1999 until July 2002 and as a legal assistant from July 2002 to May 2003.

In 2001 the State Public Defender's Office became Oregon Public Defense Services (OPDS) under the Oregon Public Defense Services Commission.

In January 2003, OPDS hired Defendant Peter Ozanne as Plaintiffs' supervisor.

2 - OPINION AND ORDER

On February 26, 2003, Sharer's son was arrested.  Sharer left work early that day and took the following two days off to deal with the situation.  Although Sharer returned to work on February 28, 2003, she left work at 1:30 p.m.  She submitted a timesheet, however, that reflected she had worked a full day on February 28.

On March 3, 2003, Ozanne and Peter Gartlan, Chief Deputy Public Defender, met with Sharer to discuss the apparent timesheet discrepancies.  At that meeting, Sharer informed them that she intended to take three weeks of sick leave to cope with the stress created by her son's arrest.  At the time, Gartlan expressed concern that this might not be an appropriate use of sick leave.

On March 17, 2003, Sharer sent an email informing Laura Anson, office supervisor, that Sharer could not return to work that day, she was going to "see a specialist," she might not be able to return to work the next few days, and she planned to use sick time for her absence.  That same day, Gartlan sent Sharer a letter informing her, among other things, that Sharer might have a qualifying condition under the Family Medical Leave Act (FMLA).  Gartlan included an FMLA leave-of-absence request form and a form for Sharer's health-care provider to certify Sharer's medical condition.  Gartlan also informed Sharer that Defendants looked "forward to receiving . . . documentation [of Sharer's medical

3 - OPINION AND ORDER

condition] for the purpose of authorizing sick leave."

On March 18, 2003, Sharer sent Gartlan an email stating she had received his letter and the documents and advising him that she was not going to fill out the request for FMLA leave. That same day, Sharer provided Defendants with a note from Iva Wick, MS, LPC, dated March 17, 2003, in which Wick stated: "Please excuse [Sharer] at work at this time for confidentiality reasons until the end of the month. Upon her return to work, she may need a modified working schedule which will be re-evaluated at that time."

On April 1, 2003, Sharer met with Gartlan. On April 2, 2003, Gartlan sent Sharer a letter in which he summarized their meeting; reiterated OPDS intended to provide Sharer "with all the benefits that the law and state allow"; asked Sharer to sign a release for Gartlan to talk to Wick to get her assistance with "creating a work regimen and work environment that will allow Sharer to perform the core functions of your employment"; informed Sharer that he intended to "tentatively label [her] leave as FMLA-OFLA [Oregon Family Leave Act], based on the description [Sharer] provided [Gartlan] regarding the cause for [her] absence"; and urged Sharer to submit the FMLA forms.

On April 2, 2003, Sharer responded to Gartlan via email and informed him that she would not release her medical diagnosis to Gartlan or any member of his management team; she was not

4 - OPINION AND ORDER

requesting leave under FMLA or OFLA "because this is not a family leave issue"; she would not provide further documentation of her medical condition; and she would not be back to work on April 3, 2003.

On April 4, 2003, Gartlan sent Sharer a letter in which he noted his decision to conditionally designate the time that Sharer was away from the office as FMLA/OFLA leave; requested Sharer to provide medical documentation to support her requests for accommodation by April 11, 2003; and informed her that failure to provide the documentation could subject her to disciplinary procedures.

On April 8, 2003, Sharer sent an email to Gartlan informing him that, among other things, she would not fill out the FMLA/OFLA leave forms. Sharer also sent Gartlan another letter from Wick dated April 8, 2003, in which Wick noted Sharer had reported "increased symptoms" that interfered with her work duties and requested Defendants to allow Sharer to have "some kind of a modified work schedule." Wick did not identify Sharer's medical condition or diagnosis.

On April 11, 2003, Gartlan sent Sharer a letter in which he noted Defendants had reviewed the April 8, 2003, letter from Wick, but Defendants concluded Wick did not provide enough information for Defendants to identify Sharer's symptoms and their effect on her ability to perform her job, whether they were

caused by or related to a disability, or whether an accommodation was necessary.  Gartlan also requested Sharer to allow him to contact her doctors; pointed out that Sharer still had not returned the FMLA/OFLA certification forms; noted she would be subject to discipline if she did not return the forms; advised her that she needed to return to work on April 14, 2003; and indicated he would move her work station to be closer to a co-worker who she was comfortable around.

On April 13, 2003, Sharer responded to Gartlan by email and stated "No, I don't think so" to the requirement that she return to work.  She also advised she would be requesting a lateral transfer.

On April 14, 2003, Gartlan sent Sharer a written reprimand for her refusal to return to work on April 14 and her refusal to provide the required medical documentation regarding her leave of absence.  Gartlan informed Sharer that her refusals constituted insubordination, misconduct, and "other unfitness to render effective service."  Gartlan also advised he would begin termination proceedings if Sharer did not return to work on April 16, 2003.

Sharer did not return to work on April 16.  On April 17, 2003, Gartlan notified Sharer that he had commenced pre-dismissal proceedings and that he had scheduled a pre-dismissal meeting for April 23, 2003.  He also advised Sharer that she could attend

6 - OPINION AND ORDER

with witnesses and/or submit written testimony.

The pre-dismissal meeting occurred on April 30, 2003.  On May 12, 2003, Gartlan sent Sharer a letter in which he memorialized the meeting; related the history of Sharer's issues beginning in March 2003; and noted Sharer produced at the meeting a report from Mark Olsen, M.D., dated April 22, 2003.  In the report, Dr. Olsen diagnosed Sharer as suffering from agoraphobia with panic disorder and depression; prescribed Paxil, amitriptyline, alprazolam, and counseling; and authorized "time loss" from  April 1 to May 15, 2003.  Gartlan noted Olsen's diagnosis and Sharer's reliance thereon were inconsistent with the reasons Sharer had given previously for her absence, which included concern for her son, "confidentiality reasons," and a prior surgery.  In light of the conflicting reasons that Sharer provided to Defendants, Gartlan stated he doubted the validity of the information that Sharer provided at the April 30, 2003, hearing and would need a second medical opinion before making a final decision on Sharer's termination.  Accordingly, Gartlan informed Sharer that he was making arrangements for her to be examined by another doctor as soon as possible pursuant to the FMLA/OFLA.  Gartlan also advised Sharer that her failure to attend the appointment would result in further discipline.

On May 15, 2003, Sharer sent an email to Defendants in which she informed them that she was not requesting FMLA leave, and,

therefore, she would not attend the scheduled medical appointment.

On May 20, 2003, Gartlan sent Sharer a notice of dismissal effective May 27, 2003, on the grounds of misconduct, insubordination, inefficiency, and "unfitness to render effective service."

## PROCEDURAL BACKGROUND

On November 18, 2004, Plaintiffs filed a Complaint seeking damages and injunctive relief on the grounds that Defendants violated the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12112 and 12203; the Rehabilitation Act, 29 U.S.C. § 794; and medical-leave laws when they (1) failed to accommodate Sharer's disabilities, (2) terminated Plaintiffs' employment because of Sharer's disability, (3) perceived Sharer as being disabled, (4) terminated Plaintiffs' employment in retaliation for Plaintiffs' assertions of their rights under the ADA, (5) terminated Humber's employment because he was associated with Sharer, and (6) terminated Humber's employment for opposing Defendants' unlawful employment acts or practices.  In addition, Plaintiffs alleged Defendants wrongfully discharged Plaintiffs in retaliation for taking medical leave and for asserting their rights under medical-leave laws.

On June 27, 2005, the Court granted Defendants' Motion to

8 - OPINION AND ORDER

Dismiss as to (1) Plaintiffs' claims under the ADA against Ozanne and Gartlan except for Plaintiffs' claim for prospective injunctive relief, (2) Plaintiffs' claims under the ADA against the State of Oregon, (3) Plaintiffs' claims under the Rehabilitation Act against Ozanne and Gartlan, and (4) Plaintiffs' claims against all Defendants for wrongful discharge.

On September 2, 2005, Plaintiffs filed a First Amended Complaint in which they alleged Defendants Ozanne and Gartlan violated the ADA and the State violated the Rehabilitation Act when they (1) failed to accommodate Sharer's disability and (2) terminated Plaintiffs' employment.  Plaintiffs also alleged Defendants discharged Plaintiffs in retaliation for taking medical leave and for asserting their rights under medical-leave laws in violation of 29 C.F.R. § 825.220.

On March 14, 2006, Defendants filed a motion seeking summary judgment as to Plaintiffs' claims under the Rehabilitation Act on the ground the agency that employed Plaintiffs does not receive federal funds.  On June 28, 2006, the Court granted Defendants' Motion.

On August 14, 2006, Plaintiffs filed a Second Amended Complaint in which they allege (1) Ozanne and Gartlan violated the ADA by terminating Plaintiffs' employment because of Sharer's disabilities and/or because Humber was associated with Sharer

and/or in retaliation against Humber for opposing Defendants' unlawful acts or practices; (2) Defendants discharged Plaintiffs for asserting their rights under the FMLA; (3) Ozanne and Gartlan deprived Plaintiffs of their right to equal protection; (4) Defendants disciplined Humber in retaliation for disclosing unlawful employment practices in violation of Oregon's Whistleblower Statute, Or. Rev. Stat. § 659A.203; and (5) Defendants discharged Sharer in retaliation for her invocation or utilization of procedures available to her pursuant to Oregon Revised Statutes § 659A.100-145.

On December 4, 2006, Defendants moved for summary judgment on Plaintiffs' equal-protection claim, Sharer's FMLA claim, Humber's whistleblower claim, and Sharer's retaliatory discharge claim.

On March 30, 2007, the Court issued an Opinion and Order in which it granted Defendants' Motion for Summary Judgment on Plaintiffs' equal-protection claim, Sharer's FMLA claim, Humber's whistleblower claim, and Sharer's retaliatory discharge claim. On April 5, 2007, Sharer filed a Motion for Reconsideration seeking an order reversing the Court's decision with respect to Sharer's FMLA claim.


**<u>DISCUSSION</u>**

Sharer does not dispute the Court's conclusion that she did

10 - OPINION AND ORDER

not seek to exercise her right to medical leave under FMLA.
Instead Sharer asserts she is entitled to bring a FMLA claim on
the ground that she was discharged in retaliation for opposing
practices by Defendants that violated FMLA.  Specifically,
Plaintiff asserts she opposed Defendants' "short deadlines" for
medical documentation, the scope of documentation requested, and
Defendants' "disregard for Sharer's right of confidentiality."

I.   **Defendants' Deadlines**

Sharer did not offer any statute, rule, regulation, or case
law to support her assertion that she may bring a claim under
FMLA for Defendants' alleged failure to provide her with
sufficient time to respond to their requests for medical
information.  Moreover, the record reflects Defendants sought
medical information from Sharer in an effort to determine her
eligibility for FMLA leave no less than four times from March 17,
2003, through April 11, 2003, and did not make a decision
regarding Sharer's termination until May 20, 2003.  Thus, Sharer
had over two months to provide Defendants with information about
her medical condition.

On this record, the Court concludes two months was adequate
time for Sharer to provide Defendants with the required medical
certification, and, therefore, Sharer's objections to Defendants'
deadlines do not constitute opposition to practices by Defendants
that violated FMLA.

11 - OPINION AND ORDER

**II.  Scope of Documents Defendants Requested**

As the Court noted in its March 30, 2007, Opinion and Order, the employer bears the responsibility to determine whether an employee's leave request is covered by FMLA.  29 C.F.R. § 825.208(a).  To curb potential abuse of FMLA, Congress included medical-certification requirements.  *See* H.R. Rep. No. 103, at 39 (1993); S. Rep. No. 103-3, at 27-28 (1993), 1993 U.S.C.C.A.N. 3. Specifically, FMLA provides an employer may require an employee's request for leave to be supported by medical certification issued by the employee's health-care provider.  29 U.S.C. § 2613(a). FMLA also provides an employee's certification shall be sufficient if it states (1) the date on which the serious health condition commenced, (2) the probable duration of the condition, (3) the appropriate medical facts within the knowledge of the health care provider regarding the condition, and (4) a statement that the employee is unable to perform the functions of his or her job if the leave is for the employee's own serious health condition.  29 U.S.C. § 2613(b).

Defendants did not seek more medical information from Sharer than is authorized under FMLA.  Sharer, however, responded with notes from her provider that did not meet FMLA's requirements for certification.  FMLA requires an employer to advise the employee of a deficiency in the employee's certification if the employer finds the certification to be insufficient.  Defendants, in

compliance with FMLA, consistently requested additional
information from Sharer.  *See* 29 C.F.R. § 825.305(d).

On this record, therefore, the Court concludes Defendants'
initial and subsequent requests for medical information were not
beyond the bounds of what is allowed under FMLA.  Sharer's
objection to Defendants' requests, therefore, does not constitute
opposition to practices by Defendants that violate FMLA.

**III. Sharer's Right to Confidentiality**

Sharer alleges Defendants violated FMLA when they requested
that she release her medical and psychological reports.  As
noted, however, employers are required to determine whether an
employee's request for leave is covered under FMLA.  Thus,
employers may seek certification from the employee's medical
provider to meet this requirement.  Defendants' requests for
certification, therefore, did not constitute illegal conduct
under FMLA.

In addition, FMLA authorizes an employer to require an
employee to obtain a second medical opinion if the employer
questions the validity of the initial certification submitted by
the employee.  29 U.S.C. § 2613.  If the second medical opinion
differs from the first opinion, the employer may require the
employee to obtain the opinion of a third health-care provider
designated or approved jointly by the employer and the employee.
*Id*.  The third medical opinion shall be final and binding on the

13 - OPINION AND ORDER

employer and the employee.  *Id*.  Thus, FMLA enables the employer
to prevent employee abuse by ensuring the employee's requested
medical leave is necessary.  *Id*.  *See also Washington v. Fort
James Operating Co.,* 110 F. Supp. 2d 1325, 1330 (D. Or.
2000)(citing 29 U.S.C. § 2613).

As the Court noted in its March 30, 2007, Opinion and Order,
Defendants questioned the validity of the certification that
Sharer finally provided at her pre-dismissal hearing because
Sharer had given Defendants a variety of other reasons for taking
leave, including concern for her son, "confidentiality reasons,"
and a prior surgery.  Defendants, therefore, were authorized
under FMLA to request Sharer to obtain a second medical opinion
from a doctor chosen by Defendants.  Neither Defendants' request
for certification nor Defendants' request that Sharer obtain a
second medical opinion violated FMLA.  The Court, therefore,
concludes Sharer's objections to Defendants' requests do not
constitute opposition to a practice by Defendants that violated
FMLA.

Accordingly, the Court adheres to its March 30, 2007,
Opinion and Order in which it concluded Defendants are entitled
to summary judgment as to Sharer's FMLA claim.


**CONCLUSION**

For these reasons, the Court **GRANTS** Plaintiff Sharer's

14 - OPINION AND ORDER

Motion for Reconsideration (#173) to the extent that the Court has reconsidered the matter, but the Court, nonetheless, adheres to its March 30, 2007, Opinion and Order in which it concluded Defendants are entitled to summary judgment as to Sharer's FMLA claim.

IT IS SO ORDERED.

DATED this 17th day of April, 2007.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge

15 - OPINION AND ORDER